IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br>vs.<br>JAMES NOAH HUGHES,<br>*Defendant.* | DOCKET NO. 1:25-CR-36 |

**DEFENSE SENTENCING MEMORANDUM**

James "Noah" Hughes, through counsel, Assistant Federal Public Defender Rhett H. Johnson, submits this Sentencing Memorandum. Hughes pled guilty to one count of receipt of child pornography. The presentence report ("PSR") calculates an advisory range of 262 to 327 months (Total Offense Level 39; Criminal History Category I). PSR ¶ 120. Because that range exceeds the 240-month statutory maximum, the applicable guideline sentence would be 240 months. This range rests on disputed guideline calculations addressed below. Hughes asks the Court to sustain his objections, calculate an advisory guideline range of 135 to 168 months, and impose a sentence of 120 months, consistent with the sentence recommendation required by the plea agreement.

Even if the Court overrules his guideline objections, Hughes maintains that a sentence of 120 months remains appropriate in light of his youth, lack of criminal history, the circumstances of his relationship with MFV, and his personal history and

characteristics.

## I. Restitution

At the time of this filing there are no outstanding restitution disputes.

## II. Objections To Supervised Release Conditions

The Court's Standing Order establishes the Standard Sex Offender Conditions as a district-wide default, providing that they "shall be imposed" and are "deemed to be imposed" in sex-offense and child-pornography cases "unless affirmatively omitted by the presiding judge." *See In re Standard Sex Offender Conditions of Probation and Supervised Release*, Misc. Order No. 3:21-MC-00003, at 1 (W.D.N.C. Jan. 11, 2021). In practical terms, this Order creates a notice and demand structure, where the defendant must identify objectionable proposed conditions and specifically request their omission.

Accordingly, Hughes now asks the Court to omit Conditions 3 and 9. In reviewing this district's prior standing order, the Fourth Circuit held that a court's duty to explain special conditions "cannot be satisfied or circumvented" by a standing order applying them across broad categories of defendants. *United States v. McMiller*, 954 F.3d 670, 676–77 (4th Cir. 2020). Each challenged condition must be reasonably related to Hughes and impose "no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d).

### A. Condition 3 – Polygraph and Other Physiological Testing

Condition 3 would allow the probation officer to require physiological testing that may include a polygraph, computer voice stress analysis, or unspecified "other

tests." Hughes does not object to evaluation, appropriate treatment, or ordinary compliance monitoring. But no provider has recommended physiological testing or identified a clinical need for it.

### 1. No Individualized Justification

*United States v. Dotson*, 324 F.3d 256 (4th Cir. 2003), does not make this broad condition automatic. There, the Fourth Circuit approved polygraph and plethysmograph testing as part of an existing treatment plan, expressly noting the testing was "not aimed at gathering evidence to inculpate or exculpate" the defendant, but instead contemplated as a potential tool within treatment, with results kept from public disclosure. *Id.* at 260–61. Condition 3 inverts that structure. Rather than testing contemplated as a component of court-ordered treatment plan, it hands Probation freestanding authority to choose the test, its frequency, and its scope, untethered to any provider's professional judgment. *Dotson* does not sanction this approach.

The offense category alone cannot substitute for an individualized justification under § 3583(d). *See United States v. Castellano*, 60 F.4th 217, 225–26 (4th Cir. 2023) (*Castellano I*) (rejecting a pornography restriction unsupported by individualized evidence); *United States v. Castellano*, 172 F.4th 295, 302–03 (4th Cir. 2026) (*Castellano II*) (upholding a later restriction supported by a treatment provider's individualized assessment and testimony). Although those cases involved restrictions on otherwise lawful pornography, they illustrate why the Court must examine the justification for the particular restriction proposed. No comparable individualized justification for physiological testing has been identified here.

### 2. Improper Delegation to Probation

Condition 3 also raises a delegation concern. A court may authorize Probation to administer the details of a condition the Court has imposed, but it may not delegate the antecedent decision as to whether the defendant must undergo a distinct form of treatment or punishment. *United States v. Van Donk*, 961 F.3d 314, 327–28 (4th Cir. 2020); *United States v. Comer*, 5 F.4th 535, 547–48 (4th Cir. 2021). As written, Condition 3 appears to leave Probation to decide not merely how physiological testing will be administered, but whether Hughes will be subjected to such testing at all, as well as the type, frequency, and scope of that testing.

The Court should omit the physiological-testing language from Condition 3 in its entirety. If a qualified treatment provider later concludes that such testing is clinically necessary, Probation may seek modification of the conditions from the Court. Any testing authorized by the Court should be limited to legitimate treatment and compliance purposes and administered in a manner that preserves Hughes's Fifth Amendment rights.

## B. Condition 9 – Prior Probation Approval of Electronic Devices

Condition 9 bars Hughes, except as required for employment, from possessing or using any network-capable device without prior approval. Close oversight is appropriate. But Condition 10 permits comprehensive monitoring, Condition 11 prohibits encryption, and Condition 12 requires disclosure of devices, passwords, accounts, and screen names. Those other conditions already reveal what Hughes uses

and detect circumvention. Prior approval adds the power to deny an ordinary, fully monitorable device as a matter of preference by the probation officer.

*McMiller* reviewed this district's earlier standing order and vacated, as unexplained, a materially identical device-approval condition. 954 F.3d at 674, 676–78. The current Standing Order does not supply the individualized reason why Hughes needs prior approval in addition to disclosure, monitoring, and anti-circumvention conditions.

The defense recognizes that *United States v. Ellis* later rejected a facial delegation challenge to this same device-approval language. 112 F.4th 240, 253–55 (4th Cir. 2024). But *Ellis* does not make the condition automatic or appropriate in this case. Rather, it upheld the condition on a developed record after four revocations, repeated use of unauthorized devices, daily pornography use, dishonesty, and resistance to treatment. *Id.* at 257–59. Unlike Ellis, whose extensive history of supervision violations and misuse of electronic devices supplied an individualized basis for the restriction, Hughes is being sentenced for the first time and has no demonstrated history of concealing devices, circumventing monitoring, or violating supervision.

*Ellis* also identifies the limiting principle. The sentencing court explained that approval was a process for presenting devices to Probation and ensuring that installed software would not interfere with monitoring. *Id.* at 254–56. Conditions 10 through 12 substantially address those purposes by requiring disclosure of devices and accounts, permitting monitoring, and prohibiting circumvention. On this record,

there is no individualized reason why those protections are insufficient without the additional requirement of prior approval.

Hughes preserves his Article III objection that unbounded approval authority allows Probation to determine the practical extent of the restriction. He recognizes that *Ellis* controls its facial validity. 112 F.4th at 253–55. Alternatively, the Court should expressly limit the approval requirement to ensure that a proposed device can be disclosed and effectively monitored, consistent with the rationale described in *Ellis*.

> *The defendant shall not use an unreported device or interfere with or evade monitoring. If effective monitoring is impracticable, Probation may seek modification from the Court.*

## III. PSR OBJECTIONS

### A. Paragraphs 20–39 – Relevant Conduct (U.S.S.G. § 1B1.3)[1]

The "internet-downloaded" files found on Hughes's devices were not relevant conduct to the offense of conviction—Hughes's receipt of videos from his then 16-year-old girlfriend. *See* ECF No. 38 (Defense PSR Objections).

The offense of conviction anchors the relevant conduct analysis. Hughes pled guilty only to Count Six, which concerns images MFV sent him over Snapchat on October 27, 2024. PSR ¶ 18. Probation does not contend that the internet-downloaded files satisfy § 1B1.3(a)(1). It instead relies exclusively on § 1B1.3(a)(2), concluding that the files were part of the "same course of conduct" because they were found on

[1] For clarity, the term "relevant conduct" as used herein refers to the definition in U.S.S.G. § 1B1.3, not the broader usage of that term in Local Rule 32.4(a), which does not incorporate § 1B1.3's limiting requirements.

the same device at the same time.

That is not the governing test. Conduct qualifies as the "same course of conduct" only when it is sufficiently connected or related to the offense of conviction to constitute a single episode, spree, or ongoing series of offenses. U.S.S.G. § 1B1.3 cmt. n.5(B)(ii); *United States v. McDonald*, 28 F.4th 553, 563–64 (4th Cir. 2022). Courts consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). When one factor is absent, a stronger showing on another is required. Id.

Probation identifies neither a regular pattern connecting the two sets of conduct nor sufficient similarity to make them part of one ongoing series. The offense of conviction arose from Hughes's receipt of self-produced videos sent directly by MFV during their otherwise lawful dating relationship. The disputed files were downloaded from the internet, depicted minors Hughes did not know, and had no demonstrated connection to MFV, their relationship, or the Snapchat exchange underlying Count Six. The conduct therefore differed in its source, victim relationship, method of acquisition, and surrounding circumstances. Although both categories of images constitute child pornography, that shared legal classification does not itself establish that their acquisition was part of the same course of conduct. The inquiry requires a meaningful connection between the underlying conduct, not merely that both categories of material fall within the same federal prohibition.

The fact that both sets of images were eventually found on the same device may establish overlapping possession, but it does not establish that the images were

acquired as part of a common course of conduct. Treating common storage as sufficient would create a “same device” rule under which every image found on an electronic device becomes relevant conduct to every other image on that device, regardless of how, when, or from whom it was obtained. Section 1B1.3 contains no such rule. Even assuming some temporal proximity, that factor does not, standing alone, establish a common course of conduct in the absence of a demonstrated pattern connecting the two categories of activity.

Nor does *United States v. McVey*, 752 F.3d 606 (4th Cir. 2014), compel a different result. There, the Fourth Circuit affirmed a relevant conduct finding based on evidence that the defendant had possessed and distributed child pornography over a ten-year period, including at least seven separate uploads. *Id.* at 611–13. That evidence established an identifiable pattern of ongoing activity notwithstanding a substantial temporal gap. Here, by contrast, Probation identifies no comparable pattern connecting Hughes's receipt of images directly from MFV during their dating relationship with his separate acquisition of images from the internet. Unlike the repeated possession and distribution activity in *McVey*, the two categories of conduct here differed in their circumstances and manner of acquisition, and their eventual storage on the same device does not independently establish a single course of conduct.

Probation’s reliance on *King v. United States*, No. 1:11-cr-00121, 2015 WL 4507677 (D. Me. July 24, 2015), does not cure that deficiency. *King* is an unpublished district court decision from another circuit addressing relevant conduct through an

ineffective assistance claim under § 2255. More importantly, it involved materially different facts. The defendant there surreptitiously recorded his 12-year-old stepdaughter in the bathroom while also maintaining a collection containing other images of victims in their young teens. *Id.* at *10–11. The offense conduct and the collection thus involved closely related forms of exploitation directed toward similarly situated victims.

Here, by contrast, the offense of conviction involved videos sent directly to Hughes by his 16-year-old girlfriend within an existing relationship, while the disputed files were internet downloads depicting unknown minors. Those differences go directly to the similarity inquiry required by § 1B1.3. *King* therefore does not establish that the two distinct sets of conduct here constituted a single episode, spree, or ongoing series of offenses.

Because storage on the same device does not establish the similarity, regularity, and temporal relationship required by § 1B1.3(a)(2), the Court should sustain the objection and exclude the internet-downloaded files from the guideline calculation.

### B. Paragraphs 39, 49, and 54 – Distribution Enhancements Do Not Apply (U.S.S.G. §§ 2G2.2(b)(3)(F), 2G2.1(b)(3))

Probation applies the two-level "distribution" enhancements by rebranding Hughes's request for, and receipt of, videos from MFV as "distribution" on the theory that Hughes "induced" MFV to send them. PSR ¶ 39. That framing cannot be squared with the guidelines' definition of "distribution," which expressly <u>excludes</u> "the mere

solicitation of such material by a defendant." U.S.S.G. § 2G2.1 cmt. n.1; U.S.S.G. § 2G2.2 cmt. n.1.

That exclusion controls the analysis here. Although the commentary broadly defines "distribution" to include acts related to the transfer of material, it expressly excludes "the mere solicitation of such material by a defendant." U.S.S.G. §§ 2G2.1 cmt. n.1, 2G2.2 cmt. n.1. Probation identifies Hughes's requests for images as the conduct constituting distribution, but those requests are precisely the conduct the commentary excludes. The subsequent transmission of images by MFV does not convert Hughes's solicitation and receipt into an act of distribution by Hughes.

The Fourth Circuit's decision in *United States v. Hecht*, 470 F.3d 177 (4th Cir. 2006), is consistent with this distinction. There, the defendant transmitted child pornography images to an undercover agent by pointing a webcam at his computer screen. The court held that this conduct constituted distribution even though the defendant had not transmitted the underlying image files as attachments. *Id.* at 182–83. The court expressly acknowledged the Guidelines commentary's exclusion of "mere solicitation," explaining that it did not alter the analysis. *Id.* at 183 n.3. By contrast, Hughes did not display or transmit images to another person; he requested and received images that MFV sent to him.

Other courts applying § 2G2.1(b)(3) have likewise found distribution where the defendants engaged in affirmative acts transferring images, rather than merely requesting and receiving them. In *United States v. Hernandez*, the Ninth Circuit affirmed the § 2G2.1(b)(3) enhancement where the defendant took sexually explicit

images and later "transmitted those images … to" the minor victim—i.e., the defendant himself committed the act of transmission that effected a transfer. 894 F.3d 1104, 1108–10 (9th Cir. 2018). In *United States v. Schuster*, the Seventh Circuit affirmed a distribution finding where the defendant admitted he became "physically ill … after sending the pictures *to the* requesting person," and the images themselves were staged for a recipient. 706 F.3d 800, 803–05 (7th Cir. 2013) (emphasis added).

But those facts are absent here. There is no evidence that Hughes transferred the images to anyone—no forwarding, no posting, no peer-to-peer sharing, no trading, no making images accessible to others, and no other "transfer conduct" on Hughes's part. The only "transfer" identified is MFV sending images to Hughes, which is receipt from Hughes's standpoint. Calling that "distribution" runs afoul of the ordinary meaning of the term and collapses the distinction provided in the commentary that specifically excludes "mere solicitation" from the enhancement's reach.

The Sentencing Commission's stated rationale confirms that probation's approach here is misguided. In adopting the distribution enhancement, the Commission explained that because traffickers sentenced under § 2G2.2 receive an increase for distributing child pornography, "an individual who produces and distributes the image(s) also should be punished for distributing the item." U.S. Sent'g Guidelines Manual app. C, amend. 664 (U.S. Sent'g Comm'n 2004). That rationale addresses defendants who produce images and then engage in acts constituting distribution—not defendants whose conduct is limited to soliciting and receiving images for themselves.

Even apart from the commentary's express exclusion for "mere solicitation," the enhancement does not fit the plain text. Both provisions require that "the defendant knowingly engaged in distribution." U.S.S.G. §§ 2G2.1(b)(3), 2G2.2(b)(3)(F). The Fourth Circuit has instructed that sentencing courts begin with the Guideline's text and give it its "plain meaning." *United States v. Strieper*, 666 F.3d 288, 294 (4th Cir. 2012) (quoting *United States v. Hargrove*, 478 F.3d 195, 205 (4th Cir. 2007)). On this record, Hughes did not *engage* in distribution in any ordinary sense—he was the recipient of material, not a distributor who transferred it to others, made it available to others, or otherwise participated in its dissemination.

Finally, in an appeal to past practice, the probation officer states that "this Court has applied the enhancements for distribution" in "multiple cases with similar fact patterns," but supplies only docket numbers. *See* PSR, Add., p. 29.

As an initial matter, district court rulings are not binding precedent, even within the same district. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Thorpe v. Clarke*, 37 F.4th 926, 943 n.6 (4th Cir. 2022). More importantly, the bare references to past practice disclose neither the facts found in those cases nor the legal reasoning applied. Without the relevant presentence reports, transcript excerpts, or written orders, the defense cannot determine whether those cases involved comparable conduct or whether the distribution issue was disputed at all. The Court should therefore resolve this objection from the Guidelines' text, the record in this case, and legal authority available to both parties—not from opaque references to prior proceedings the defense cannot meaningfully examine or attempt to distinguish.

For each of these reasons, and because Hughes's conduct amounts to solicitation and receipt, not "distribution," the Court should apply the plain language of the guideline text and commentary, sustain the objection and remove the two-level distribution enhancements under U.S.S.G. §§ 2G2.2(b)(3)(F) and 2G2.1(b)(3).

## IV. 18 U.S.C. § 3553(a) Factors

### A. Nature of the Offense

The offense of conviction is serious, and a 120-month sentence is a serious punishment. At the time, Hughes was 20 years old and involved in an otherwise lawful dating relationship with MFV, who was 16. Within that relationship, MFV created and sent sexually explicit images to Hughes. Their dating relationship does not excuse the creation and receipt of those images, but it does materially distinguish the offense from cases involving coercive production, commercial exploitation, organized trading, or dissemination to third parties.

Hughes and MFV came of age in an environment in which smartphones and the recording of ordinary life were ubiquitous. Social science literature reflects that the exchange of intimate images has become common within adolescent dating relationships and is frequently shaped by immaturity, impulsivity, and relationship pressure.[2] This context does not excuse Hughes's conduct. It does, however, help distinguish the offense of conviction from cases involving organized distribution, trading, profiteering, or the deliberate public dissemination of images that can then

[2] Katalin Parti, Cheryle E. Sanders & Elizabeth K. Englander, *Sexting at an Early Age: Patterns and Poor Health-Related Consequences of Pressured Sexting in Middle and High School*, 93 J. Sch. Health 73 (2023).

be perpetually copied and redistributed.

### B. Personal History and Characteristics.

Hughes is now 22 years old. He was 20 years old at the time of the offense. His life will forever be impacted by the poor decisions made during his youth that brought him before this Court for sentencing. He grew up in Macon County with both his parents, older brother, and younger sister. His life was shaped by poverty, instability, and untreated mental illness. As discussed in the presentence report, his childhood was marked by adverse circumstances including his parents' substance abuse, verbal abuse, and at times extreme physical discipline. Hughes, who has always been slight in stature, also endured significant bullying at school that ultimately led to truancy proceedings before he dropped out of school altogether.

Hughes has struggled with major depressive disorder, anxiety disorder, a history of self-harm and suicidal ideation, and at least one suicide attempt. By his early teenage years, Hughes was learning to cope by using drugs and alcohol. His older brother introduced him to huffing gasoline. By age 17, Hughes was drinking alcohol daily. He stopped for a while after his mother—to whom he is very close—was diagnosed with cirrhosis of the liver but resumed drinking daily after she was released from the hospital.

By the time Hughes entered the relationship with MFV, he was not a well-adjusted young man. Although legally an adult, he continued to function with pronounced adolescent immaturity. The law draws the line where it does, and Hughes accepts that he must be punished as an adult. But a 120-month sentence will consume

much of his twenties and return him to society well into adulthood. It is difficult to characterize that consequence as anything other than severe.

### C. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment and Adequate Deterrence

If the Court overrules the defense objections, the statutory maximum will reduce the effective guideline sentence to 240 months. That sentence would be excessive in light of Hughes's age, the circumstances of the offense, and the substantial punishment already represented by a decade in federal prison. A 120-month sentence will remove Hughes from society throughout most of his twenties, unmistakably communicate the seriousness of the offense, and provide both specific and general deterrence without imposing a punishment disproportionate to his individual culpability.

### D. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant

A prison term longer than ten years is not necessary to protect the public. By the time Hughes is released, he will be well into adulthood and will remain subject to substantial supervision, monitoring, and treatment requirements designed to address any continuing risk.

### E. The Need for the Sentence Imposed to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner

A 120-month sentence is ample time to allow Hughes to complete educational and vocational programming within the BOP and to participate in treatment. Though

he exercised poor judgment and impulsivity, he is a highly intelligent and introspective young man who intends to make productive use of his time.

### F. The Kinds of Sentences Available and the Sentencing Guidelines

The guidelines themselves are just one of the many factors listed in § 3553(a) and carry no greater weight than the other factors, including the nature of the offense and personal history and characteristics of the defendant.

### G. The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct

The requested sentence would not create an unwarranted sentencing disparity. Section 3553(a)(6) concerns disparities among defendants with similar records who have engaged in similar conduct. Hughes's youth, lack of criminal history, personal circumstances, and the particular nature of his offense provide legitimate grounds for distinguishing his case from others involving more aggravated conduct.

## V. CONCLUSION

For these reasons, Hughes asks the Court to sustain his objections to the guideline calculations, find an advisory guideline range of 135 to 168 months, and, irrespective of the final guideline calculations, impose a sentence of 120 months.

In determining the appropriate sentence under 18 U.S.C. § 3553(a), Hughes asks the Court to consider the particular circumstances of his offense, including the nature of his relationship with MFV, their relative ages, and the circumstances under which the images were requested and exchanged. Hughes also asks the Court to consider his personal history and characteristics, including his youth at the time of the

offense, traumatic childhood experiences, and mental health struggles. Considered together, these circumstances warrant a sentence that recognizes the seriousness of the offense while remaining proportionate to Hughes's individual culpability and sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

Finally, Hughes requests that the Court omit Conditions 3 and 9 of the Standard Sex Offender Conditions of Supervised Release or, alternatively, narrow those conditions as proposed above.

Date: November 6, 2026

Respectfully Submitted,

/s/**Rhett H. Johnson**
Rhett Hunter Johnson
N.C. Bar #35365
Assistant Federal Public Defender
Federal Public Defender for the
Western District of North Carolina
1 Page Avenue, Suite 210
Asheville, NC 28801
Phone: (828) 232-9992
E-Mail: Rhett_Johnson@fd.org